J-S08044-26          2026 PA Super 146

PAMELA D. BROWN                    :     IN THE SUPERIOR COURT OF
                                   :              PENNSYLVANIA
                                   :
          v.                       :
                                   :
                                   :
                                   :
STADIA BROWN, AND ISAIAH LYLES     :
                                   :
                                   :     No. 2314 EDA 2025
APPEAL OF: STADIA BROWN            :

Appeal from the Order Entered August 19, 2025
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  0C2004418

BEFORE:  PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

OPINION BY NICHOLS, J.:                          **FILED JULY 8, 2026**

Appellant Stadia Brown (Mother) appeals from the final custody order denying her petition to relocate and modifying the prior custody order by awarding Isaiah Lyles (Father) additional custodial rights to J.B.-L. (Child).[1] We affirm.

The relevant facts as provided by the trial court are as follows:

Mother and Father were not married, but they resided together off and on for approximately two years.  Child was born in August 2018, and the instant custody matter commenced on August 21, 2023, when [Pamela D. Brown (Maternal Grandmother)] filed a custody complaint seeking shared legal and partial physical custody of the Child.  Father filed his own custody complaint on September 20, 2023, seeking shared legal and shared physical custody.  On the same day Father filed his complaint, he also filed a motion for expedited custody relief.  On October 11, 2023, Sheneel Smith ([]Paternal Grandmother), filed a complaint for custody under the cross-referenced docket number XC200441.  Thereafter, on November 1, 2023, Mother filed a motion to dismiss

_____

[1] Child was aged six at the time of the relocation hearing on May 27, 2025. ***See*** N.T., 5/27/25, at 14-15.

Maternal Grandmother's custody complaint for lack of standing and a motion to dismiss Paternal Grandmother's custody complaint for lack of standing. A hearing on Father's motion for expedited custody relief was held on November 3, 2023, after which a temporary custody order was entered by the Court (Litwin, J.) granting Mother sole legal and primary physical custody of the Child, with Father having periods of partial physical custody every Saturday from 10:00 a.m. until 6:00 p.m. Father was also awarded FaceTime calls with the Child on his non-custodial days at 7:30 p.m. Physical home inspections were also ordered on the respective residences of Mother and Father. Mother filed a complaint for custody on November 13, 2023, seeking sole legal and sole physical custody of the Child. Father filed a custody contempt petition on December 12, 2023, alleging that Mother was not waiting for Father to arrive at custody exchanges, despite advising her that he would be running late, and also for allegedly allowing Father's 7:30 p.m. phone calls with the Child to last for only approximately one minute. A January 18, 2024 hearing was scheduled on Mother's motions to dismiss the custody complaints of Maternal Grandmother and Paternal Grandmother.

On January 18, 2024, Paternal Grandmother's complaint was dismissed for lack of standing (Litwin, J.) under docket number XC2004418. A temporary agreed order was also entered by the [trial] court which maintained the terms of the November 3, 2023 temporary custody order, but also additionally granted Maternal Grandmother partial physical custody of the Child every other Sunday from 10:00 a.m. until 6:00 p.m., as well as further custodial time as agreed between Mother and Maternal Grandmother with the proviso that Maternal Grandmother was prohibited from exercising overnight custodial time. Mother further agreed that Maternal Grandmother had standing to proceed on a claim for partial physical custody, and Maternal Grandmother (via the January 18, 2024 order) amended her claim to a claim for partial physical custody.

Following a custody conference with a custody hearing officer on December 12, 2023, the custody complaints were scheduled for a June 27, 2024 custody hearing. Prior to the custody hearing, on May 17, 2024, Mother filed a motion for mental health evaluation seeking an order for Father and a paternal uncle to undergo mental health evaluations. On the same date, Mother filed a contempt petition alleging that Father had failed to exercise his partial custody on numerous occasions and that he had relocated

from Philadelphia, Pennsylvania to [the state of] Delaware without Mother's consent and without complying with Pennsylvania law. On June 13, 2024, prior to the scheduled June 27, 2024 custody hearing, Mother filed with the court a "Notice of Relocation" in which she proposed to move with the Child from Philadelphia to Phoenix, Arizona.[2]

A custody hearing was scheduled for June 27, 2024. Father failed to appear, and a final order by agreement between Mother and Maternal Grandmother was accepted by the [trial] court (Palmer, J.). Under the terms of the June 27, 2024 final order, Mother was awarded sole legal and primary physical custody of the Child. Maternal Grandmother was granted partial physical custody as agreed and arranged with Mother. Father's then-pending custody complaint and contempt petition were each dismissed for lack of prosecution. Mother withdrew her then-pending contempt petition and her motion for mental health evaluation. On July 10, 2024, Father filed a counter-affidavit pursuant to 23 Pa.C.S. § 5337(d) in which he objected to Mother's proposed relocation. Maternal Grandmother did not file a counter-affidavit objecting to the proposed relocation. A scheduling conference was originally listed for November 19, 2024. However, the conference was administratively re-listed to January 9, 2025. Only Mother appeared at the January 9, 2025 scheduling conference. On January 9, 2025, Mother advised that Maternal Grandmother did not oppose her proposed relocation and that Maternal Grandmother did not intend to appear in court. Further, Mother also advised that she may be relocating to southern New Jersey rather than Arizona (as she had previously indicated in her June 13, 2024 "Notice of Relocation"). Following the scheduling conference, a custody relocation hearing was scheduled for May 27, 2025.[3] Mother and her counsel, Father, and Maternal

_____

[2] Mother's Notice of Relocation stated, *inter alia*, that "Mother proposes that the times and days of Father's and Maternal Grandmother's partial custody be modified such that Father and Maternal Grandmother shall have partial custody of [Child] as agreed and arranged between the parties." Mother's Notice of Relocation, 6/13/24, at 2.

[3] The scheduling order entered January 14, 2025 states, in relevant part:

*(Footnote Continued Next Page)*

Grandmother each appeared before the undersigned at the May 27, 2025 custody relocation hearing.[4] Mother informed the [trial] court that she was now seeking to relocate to Katy, Texas. Maternal Grandmother indicated that she was not seeking an award of primary physical custody and that she did not object to Mother's proposed relocation with the Child from Philadelphia to Katy, Texas.

Trial Ct. Op., 11/18/25, at 1-5 (some formatting altered).

At the commencement of the May 27, 2026 hearing, Mother's counsel stated that "Mother is seeking a modification to [the] final custody order so that [after relocation Maternal Grandmother could have additional custodial time with Child] during winter and summer breaks in Philadelphia." N.T., 5/27/25, at 4. Mother indicated that she did not wish for Father to exercise any custodial time with Child, and explained that if Father "was more consistent and proactive in reaching out and letting me know, hey, I'm going through something, that's why I'm not seeing [Child], I would be open to giving [Father] some type of visitation or custodial rights." *See id.* at 10-11, 39.

_____

A relocation scheduling conference was held on January 9, 2025 . . . on the counter-affidavit filed . . . by [Father] objecting to Mother's notice of proposed relocation . . . .

The counter-affidavit filed . . . by [Father] is scheduled for a relocation hearing . . . .

Trial Ct. Order, 1/14/25.

[4] At the May 27, 2025 hearing, Father appeared *pro se.* *See* N.T., 5/27/25, at 1-6, 8.

Mother also testified that she had obtained a temporary Protection Against Abuse (PFA) order against Father but not a final PFA order and that, while she had filed a police report regarding Father's behavior, no criminal charges had ever been filed against Father for domestic violence against Mother. *See id.* at 36. Father admitted that he had a driving under the influence (DUI) conviction but stated that he had no other criminal convictions. *See id.* at 68. The trial court reviewed a "home investigation report" of Father provided by Mother's counsel and noted that the report reflected that Father has a DUI conviction but no other criminal convictions. *See id.* at 70-72.[5]

Mother also indicated her concerns with Father's housing status. Specifically, Mother testified that she never knew where Father lived and therefore did not know where Child would be while in Father's care. *Id.* at 25-26. Father denied having a history of drug or alcohol abuse problems or mental or psychiatric problems or treatment and testified that he had experienced homelessness in the past that had affected his ability to exercise his custodial rights to Child. *See id.* at 48, 51, 67-68. Mother's counsel argued that Father was "a safety concern" due to "his housing instability and . . . past history of violence towards . . . [Mother], and in front of . . . [Child]." *Id.* at 72 (some formatting altered).

_____

[5] Mother also testified that she was made "aware that [Father] had a warrant out for his arrest" but she was "not a hundred percent sure how true that [was]." *Id.* at 26.

Father, in turn, indicated at the commencement of the hearing that he wanted custody of Child "more than just one day a week." *Id.* at 9-10. The trial court questioned Father as to where Child would sleep during his custodial times and Father's exact times of availability to have custody of Child. *Id.* at 51, 55-56. The trial court also asked whether one of Father's relatives would be able to drive to pick up Child and care for Child during these custodial times if Father were not available. *Id.* at 55-56.

The trial court explained that after the custody relocation hearing,

> but prior to a final order being entered by the court, Mother filed a motion for special relief on July 25, 2025, requesting that the [trial] court enter its final order. The motion for special relief was administratively scheduled for a hearing on October 16, 2025.
>
> On August 18, 2025, the [trial] court entered a final order of custody, denying Mother's request to relocate with the Child to Katy, Texas, but granting her sole legal and primary physical custody of the Child. Father was granted partial physical custody of the Child on the first, third, and fourth Saturday from 3:30 p.m. to 7:30 p.m., and on the first, third, and fourth Sunday of each month from 3:30 p.m. until 7:30 p.m. Father was also granted additional partial physical custody as mutually agreed and arranged between Mother and Father. Maternal Grandmother was granted partial physical custody of the Child as agreed and arranged between Mother and Maternal Grandmother with the proviso that said partial physical custody must not interfere with Father's scheduled partial physical custody. The [trial] court also specified a schedule for both Mother's Day and Father's Day each year. Accompanying the [trial] court's final custody order was an eighteen-page Memorandum Sur Order detailing its required analysis of the custody factors under 23 Pa.C.S. § 5328(a) and the relocation factors under 23 Pa.C.S. § 5337(h), which the [trial] court considered in reaching its decision. The final custody order is dated August 18, 2025 and it was docketed August 19, 2025.
>
> On August 26, 2025, Mother filed a petition for reconsideration of the final custody order, as well as a praecipe to withdraw the July

25, 2025 petition for special relief, which was rendered moot by the entry of the final custody order. The [trial] court did not rule on the petition for reconsideration[.]

Trial Ct. Op., 11/18/25, at 5-6 (some formatting altered).

Mother filed a timely notice of appeal and both Mother and the trial court complied with Pa.R.A.P. 1925.

On appeal, Mother raises the following questions:

1. Did the trial court abuse its discretion and violate Mother's due process rights in modifying a final custody order without notice?

2. Did the trial court err[] in failing to issue a decision within the time constraints outlined in Pa.R.C[iv].P. 1915.4(d)?

Mother's Brief at 4 (some formatting altered).

**Due Process**

In her first claim, Mother argues that the trial court violated her due process rights by failing to provide "sufficient notice that a modification of custody would [b]e considered at the relocation hearing." *See id.* at 10, 16. Specifically, Mother contends that the notice provided "by the trial court was explicit that the hearing . . . was a relocation hearing on Father's counter-affidavit only" and that the trial court failed to "alert Mother that modification of the June 27, 2024, final [custody] order would be at issue at the relocation hearing." *Id.* at 14-16. Mother claims that the trial court only had authority to modify custody after approving her proposed relocation and that, "where a court denies a proposed relocation, any objection to a proposed modification

- 7 -

of the custody order that would happen in the event of a relocation, absent another request to modify, is moot." *Id.* at 23-24.

Mother argues that she "had no reason to believe, based on Father's filings or actions, that Father would even be present at the May 2025 hearing, much less that he would be seeking any type of custody of [Child]." *Id.* at 15 (some formatting altered). Mother contends that prior to the May 27, 2025 hearing she was informed by the custody hearing officer that, because "Father did not have any legal or physical custody [of Child] and Mother was not offering Father custody, the issue of Father's convictions would not come up at the relocation hearing." *Id.* at 17-18. Mother claims that she therefore did not prepare "to litigate a full custody modification trial." *Id.* Specifically, Mother contends that she withdrew her request to have Father's home inspected and declined to renew her request for Father to obtain a mental health evaluation in reliance on the custody officer's statements. *Id.* at 17-18. Mother argues that her failure to pursue documentation concerning Father's living conditions and mental health status deprived the trial court "of the ability to make a fully informed decision regarding the best interests of . . . [Child]." *Id.* at 18.

Before reaching the merits of Mother's lack-of-notice claim, we consider whether she preserved the claim for appeal pursuant to Pa.R.A.P. 302(a). We note that issues "not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also* ***Layton-Herron v. Litke***, 352 A.3d 510, 518-19 (Pa. Super. 2026) (citations omitted) (explaining

that Rule 302(a)'s waiver principle includes constitutional law issues in custody matters).

Here, at the May 27, 2025 hearing, Mother testified as to why she wanted to relocate and why she believed Father should not have any custodial time with Child. **See** N.T., 5/27/25, at 5-6, 10-11, 15-39. Father, who had filed a timely objection to the proposed relocation, testified that he wanted more custodial time with Child – specifically, more than one day a week – and the trial court questioned Father in detail about when he could realistically have custody of Child given his housing conditions, as well as Father's school and work schedules. **See id** at 9-10, 51, 55-56. At no point prior to the issuance of the trial court's custody order of August 19, 2025 did Mother raise any objection or make any argument that the trial court lacked authority to modify custody if relocation were denied, nor did she request a continuance to present more evidence against increasing Father's custodial rights.

Instead, the record reflects that at the May 27, 2025 hearing, Mother's testimony addressed why Father should not have any custodial time with Child. **See** N.T., 5/27/25, at 5-6, 10-11, 15-39, 69-72. Further, Mother's counsel argued against Father having increased custodial time with Child, all of which indicates that Mother understood, or should have understood, that the trial court could modify custody even if relocation were denied. **See id.** On this record, to the extent that Mother raises a lack-of-notice claim, we conclude that Mother failed to raise this issue in the trial court, as required by Pa.R.A.P. 302(a). That is, the trial court had no opportunity to respond to the

contention, now advanced by Mother on appeal, that it could not modify custody after denying relocation without providing more notice to Mother. Accordingly, Mother has waived any due process claim based on lack of notice and cannot raise it for the first time on appeal. *See* Pa.R.A.P. 302(a); *see also Layton-Herron*, 352 A.3d at 518-19.

In the event that Mother's lack-of-notice claim was preserved for appeal, we note that for custody matters arising under the Child Custody Act (the Act),[6] our scope of review "is of the broadest type" and we will only reverse upon finding an abuse of discretion, or if the trial court's conclusions involve legal error or "are unreasonable in light of the sustainable findings of the trial court." *C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

For custody matters arising from petitions to award or modify custodial rights, including relocation petitions, "the paramount concern is the best interests of the child," which requires trial courts to make a "case by case determination of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." *Johns v. Cioci*, 865 A.2d 931, 936 (Pa. Super. 2004) (citations omitted and some formatting altered). Section 5328(a) of the Act sets forth the best interests factors that must be considered in awarding or modifying custody. *See* 23 Pa.C.S. § 5328(a); *see also E.D. v. M.P.*, 33 A.3d 73, 79-80 & n.2 (Pa. Super. 2011).

---

[6] *See* 23 Pa.C.S. §§ 5321-5340.

Further, where a parent has petitioned to relocate a child who is the subject of a custody order, trial courts must also consider the relocation factors set forth at Section 5337(h) of the Act. **See** 23 Pa.C.S. § 5337(h). In other words, a trial court **must** "conduct a Section 5328(a) analysis when a party seeks to modify the type of custody award," **including in response to a relocation petition**, although "when a party merely seeks modification of a discrete custody-related issue[,] a comprehensive Section 5328(a) analysis is not always necessary." **E.C.S. v. M.C.S.**, 256 A.3d 449, 453 (Pa. Super. 2021) (citations omitted).[7]

_____

[7] In arguing that the trial court was not permitted to modify the parties' custody order, Mother cites to authority where the trial court had before it either a contempt petition or a petition for special relief. **See** Mother's Brief at 11-14.

While trial courts "may not permanently modify a custody order without having a petition for modification before it," contempt petitions and petitions for special relief do not constitute requests to permanently modify a custody order. **P.H.D. V. R.R.D.**, 56 A.3d 702, 706 (Pa. Super. 2012) (citation omitted); **Langendorfer v. Spearman**, 797 A.2d 303, 308 (holding that contempt petitions cannot be the basis for a change of custody); Pa.R.Civ.P. 1915.13 (stating that the relief available pursuant to a petition for special relief includes "the award of **temporary** legal or physical custody" (emphasis added)); **Connelly v. Connelly**, 2341 EDA 2020, 2021 WL 4810418, *3 n.16 (Pa. Super. 2021) (unpublished mem.) (holding that, where only a petition for special relief was before the trial court, the court "could not act to modify the visitation order permanently" (citation omitted and some formatting altered)).

A relocation petition, however, is a request to permanently modify custody or, in other words, a petition to modify custody. **See Decker v. Decker**, 2102 EDA 2021, 2022 WL 2211566, at *12-13 (Pa. Super. filed Jun. 21, 2022) (unpublished mem.); **see** Pa.R.A.P. 126(b) (permitting citation to this Court's unpublished memoranda filed after May 1, 2019 for persuasive value).

In ***Decker v. Decker***, 2102 EDA 2021, 2022 WL 2211566 (Pa. Super. filed Jun. 21, 2022) (unpublished mem.), this Court considered an order that modified custody after a parent's relocation petition was denied. In that case, after the mother filed a relocation petition and the father filed a counter-affidavit in opposition, the trial court held hearings and denied the relocation petition but nonetheless awarded the father additional custodial rights to the parties' children. ***See Decker***, 2022 WL 2211566, at *2-4. On appeal, the mother claimed that, because "a petition to modify had not been filed," the trial court had erred or abused its discretion "by modifying [the father's] periods of custody *sua sponte*, and that this modification violated her right to due process." ***Id.*** at *5, 12 (citation omitted). Concluding that the relocation petition had "put the issue of custody before the [trial] court and [the mother] therefore had notice," ***Decker*** affirmed the trial court's modification of custody. ***See id.*** at *12-13. Accordingly, where a parent files for relocation and no other petition to modify custody was before the trial court, that parent had adequate notice that the trial court could modify custody, even if relocation was denied. ***See id.***

Here, Mother's relocation petition referenced proposed modifications to the custody order and noted that Father had filed an objection to Mother's proposed relocation and modification on July 10, 2024. ***See*** Trial Ct. Op., 11/18/24, at 7-8 (citing Mother's Notice of Relocation, 6/13/24, at 2). At the outset of the May 27, 2025 hearing, Mother's counsel informed the trial court that "Mother is seeking a modification to [the] final custody order," but also

stated that Mother was only doing so in order to increase Maternal Grandmother's custodial time during school breaks in contemplation of the approval of Mother's relocation petition. *See* N.T., 5/27/25, at 4. Ultimately, the trial court concluded that Mother had adequate notice that modification of custody would be at issue during the May 27, 2025 hearing. *See* Trial Ct. Op., 11/18/25, at 7. On this record, we likewise conclude that Mother clearly had adequate notice that modification of custody would be at issue at the custody relocation hearing and, further, find no violation of Mother's due process rights. *See Decker*, 2022 WL 2211566, at \*12-13.[8]

---

[8] Mother's argument assumes that, where no other custody petition was before the trial court at the time, that the court could not stray beyond the modifications requested in her relocation petition and, accordingly, could not modify custody after denying relocation. *See* Mother's Brief at 14-16, 23-24.

However, after a party files a petition requesting modifications to custody, proper notice of the matter was provided, and the trial court considered the statutory custody factors, it is well settled that the trial court may then modify custody to effectuate the child's best interests. *See* 23 Pa.C.S. § 5388 (stating that "[u]pon petition, a court may modify a custody order to serve the best interest of the child"); *see also K.D. v. E.D.*, 267 A.3d 1215, 1224 (Pa. Super. 2021) (holding that "a custody order may be **modified at any time**, provided the modification is in the best interest of the child" and that "a petition for modification . . . requires the court to inquire into the best interest of the child regardless of whether a substantial change of circumstances has been shown" (citations omitted and some formatting altered). Stated another way, once a trial court is tasked with examining whether modifications to a custody order are necessary to serve the best interests of a child, that court is not constrained to consider only the modifications sought by the petitioning party. *See id.*

**Rule 1915.4(d)**

In her second claim, Mother argues – and the trial court concedes – that after the May 27, 2025 hearing the trial court entered an order deciding the relocation petition beyond the time allowed by Rule 1915.4(d) of the Pennsylvania Rules of Civil Procedure.  *See* Mother's Brief*.* at 27-29; *see* Trial Ct. Op., 11/18/25, at 9.  Mother contends that she was prejudiced by the trial court's delay in issuing a decision.  *See* Mother's Brief at 28.  Specifically, Mother claims that she was prevented from making decisions regarding Child's school enrollment or entering into a lease agreement.  *See id.*

For custody matters, Rule 1915.4(d) of the Rules of Civil Procedure provides:

> **(d) Prompt Decisions.** The judge's decision shall be entered and filed within 15 days of the date upon which the trial is concluded unless, within that time, the court extends the date for such decision by order entered of record showing good cause for the extension. In no event shall an extension delay the entry of the court's decision more than 45 days after the conclusion of trial.

Pa.R.Civ.P. 1915.4(d).  Rule 1915.4(d) does not, however, include "a remedy or any other sanction if the trial court does not comply with its time limits. Rather, the Rule serves [as] an instruction to the trial court to issue a decision in a custody matter within the prescribed time." *E.B. v. M.B.*, 2 WDA 2023, 2023 WL 5236119, at *6 (Pa. Super. filed Aug. 15, 2023) (unpublished

mem.).[9]  We also note that "this Court has opined that rules-based time limits may not be an appropriate basis for relief if no consequences are established for noncompliance."  **In re R.P.**, 344 A.3d 783, 794 n.10 (Pa. Super. 2025) (citations omitted).

Here, Mother urges this Court to vacate the August 19, 2025 order and to reinstate the parties' custody order of June 27, 2024 because the delay in issuing the August 19, 2025 order prevented her from making decisions concerning Child and herself.  Mother does not make any claims that the trial court erred in how it weighed the custody factors with respect to Child's best interests.  Nor does Mother cite to any authority that permits this Court to grant the relief she seeks:  to vacate an order solely on the grounds that it was issued beyond the time allowed under Rule 1915.4(d).  Further, Mother fails to cite to any authority that permits this Court to reinstate a prior custody order on the basis that the trial court violated Rule 1915.4(d).  We note that accepting Mother's invitation to vacate the order below would eliminate the custody award arrived at by the trial court after a full hearing and consideration of the current circumstances affecting Child.

---

[9] The **E.B.** Court also stated that ". . . if a timely decision is not issued, it allows either party to petition the trial court, reminding it that its decision is overdue, and if an opinion is not then issued, to petition our Supreme Court for relief."  **E.B.**, 2023 WL 5236119, at *6.  Neither Rule 1915.4 nor any of the procedural rules addressing custody, however, sets forth such a petitioning process to seek relief for violation of Rule 1915.4(d) or any other custody procedural rule.  **See** Pa.R.Civ.P. 1915.1-1915.25.

On this record, we conclude that this Court cannot grant the relief that Mother seeks, as Mother bases her right to relief on the timeliness mandate of Rule 1915.4(d). **See E.B.** 2023 WL 5236119, at \*6; **see also In re R.P.**, 244 A.3d at 794 n.10.[10] As this Court has explained, it is not our role to "enunciate new precepts of law or to expand existing legal doctrines," rather, we "are obliged to apply the decisional law [and rules of court] as determined by the Supreme Court of Pennsylvania." **Matter of M.P.**, 204 A.3d 976, 986 (Pa. Super. 2019) (citations omitted and some formatting altered). For these reasons, we conclude that no relief is due.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/8/2026

---

[10] We note that Mother filed a motion for special relief on July 25, 2025. Therein, Mother cited to Rule 1915.4(d) and "request[ed] that the court enter its final order." Trial Ct. Op., 11/18/25, at 5 (some formatting altered); **see also** Mother's Pet. Special Relief, 7/25/25, at 5. While we recognize that Mother sought to enforce the timeliness mandate contained in Rule 1915.4(d) by petitioning the trial court, as contemplated in **E.B.**, we remain unable to grant Mother the relief she seeks because only our Supreme Court may enunciate the relief or remedy for a Rule 1915.4(d) violation and the Supreme Court has not set forth any relief or remedy here. **See E.B.** 2023 WL 5236119, at \*6; **see also R.P.**, 244 A.3d at 794 n.10; **see also M.P.**, 204 A.3d at 986.